

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LEE BARCLIFF,

        Petitioner,

  -against-

JOSEPH T. SMITH, Superintendent of
Shawangunk Correctional Facility,

        Respondent.
-----------------------------------------------------------x

MEMORANDUM & ORDER

09-cv-3396 (ENV)

VITALIANO, D.J.,

*Pro se* petitioner Lee Barcliff makes application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. For the reasons stated below, the writ is denied and the petition is dismissed.

## Background

On October 30, 1999 at approximately 7:15 p.m., petitioner and two acquaintances, Richard Quamie and Nayshawn Lawson, were standing on a street in Brooklyn. In the midst of an argument, Barcliff pulled out a gun and shot Quamie once in the face, killing him.[1] Barcliff, who was drunk at the time, fled the scene of the crime but was apprehended by police officers shortly thereafter. Once in custody, Barcliff repeatedly confessed to the murder. He was charged with two counts of murder in the second degree (intentional and depraved-indifference),

---

[1] Because Barcliff was convicted, the Court recites the facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 688 F.3d 79, 80 (2d Cir. 2012).

second degree criminal possession of a weapon and third degree criminal possession of a weapon. Following a jury trial, petitioner was acquitted of intentional murder but convicted of depraved-indifference murder and sentenced to 25 years to life imprisonment.

Barcliff appealed his conviction to the Appellate Division, Second Department, arguing primarily that, although the evidence might support a conviction for intentional murder (the charge he was acquitted of), the evidence was legally insufficient to support his depraved-indifference conviction. He also argued on that appeal that his trial counsel was ineffective for failing to preserve the legal insufficiency argument, that the trial court improperly declined to give the jury a missing witness charge and that the prosecutor engaged in misconduct during his summation. The Second Department concluded that Barcliff's legal insufficiency claim was "unpreserved for appellate review" and that his remaining claims were "either unpreserved for appellate review or without merit." *People v. Barcliff*, 18 A.D.3d 666 (2d Dep't 2005). The Court of Appeals denied leave to appeal.

On December 15, 2005 petitioner moved to vacate his conviction, pursuant to CPL § 440.10, contending that his trial counsel was ineffective for failing to preserve his legal insufficiency claim. On July 6, 2006, Supreme Court denied petitioner's motion, concluding that his argument had already been rejected on the merits on direct appeal. According to petitioner, respondent never sent him a copy of that decision, nor did respondent send him the related notice of entry. Petitioner does concede, however, that Supreme Court itself sent him a contemporaneous copy of its decision. On December 9, 2008—more than two years after the § 440.10 motion had

been denied—Barcliff appealed that decision. The Second Department denied his leave application summarily.

On July 22, 2009, Barcliff filed the instant petition, advancing five claims: (1) the evidence was legally insufficient to convict him of depraved-indifference murder, (2) his trial counsel was ineffective for failing to preserve his legal insufficiency point, (3) the trial court improperly denied his request for a missing witness charge, (4) the prosecutor engaged in misconduct during summation, and (5) his trial counsel was ineffective for failing to seek a jury verdict on one of the weapons-possession counts. On April 5, 2011, petitioner filed a supplemental brief setting forth new law in support of his five initial arguments, and also advancing two new claims: first, that the trial court improperly read instructions to the jury outside of defendant's presence, and, second, that the court gave an inappropriate *Allen* charge.

Although he purports to advance all of these claims, Barcliff's primary argument is the same one he advanced on direct appeal—namely that the trial evidence, while it might arguably support a conviction for intentional murder did not support a conviction for depraved-indifference murder. According to Barcliff, because he admitted intentionally shooting Quamie and because he fired only one round, he did not endanger any bystanders nor did such conduct demonstrate a recklessly indifferent *mens rea* necessary for a depraved-indifference conviction. Respondent parries on procedural and substantive grounds.

## Standard of Review

This petition is subject, of course, to AEDPA, which provides that a federal

writ of habeas corpus may not issue to a state prisoner held subject to the judgment of a state court unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (citation omitted). Clearly established federal law "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *See Carey v. Musladin*, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006) (*quoting Williams*, 529 U.S. at 412, 120 S. Ct. at 1523). To be "clearly established" under AEDPA, federal law must be "law that is 'dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final.'" *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (citation omitted). A state court's "unreasonable application" of law must have been more than "incorrect or erroneous"; it must have been "objectively unreasonable." *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (internal quotation omitted). This is a highly deferential standard, as § 2254(d) "demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). "If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 2013 WL 5904117, at *4 (2013) (internal citations omitted). Federal courts should not "lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas review is the remedy." *Id.*

To prevail on an ineffective assistance of counsel claim, a habeas petitioner

must satisfy the two-part inquiry set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. But, there is "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (*quoting Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). Second, a petitioner must "affirmatively prove prejudice," demonstrating that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94, 104 S. Ct. at 2067-68). Where ineffective assistance in the sentencing context is alleged, the prejudice prong of *Strickland* requires a showing of a reasonable probability that, but for counsel's ineffectiveness, the sentence imposed would have been different. *See United States v. Workman*, 110 F.3d 915, 920 (2d Cir. 1997); *McNaught v. United States*, 646 F. Supp. 2d 372, 378 (S.D.N.Y. 2009).

## Analysis

Respondent argues that all of Barcliff's claims are untimely because of his two-year delay in appealing the denial of his § 440.10 motion. Under AEPDA, "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). In calculating AEDPA's one-year limitations period, "the time during which a properly filed application for State post-conviction or other collateral

review with respect to the pertinent judgment or claim is pending shall not be counted." 28 U.S.C §2244(d)(2). The post-conviction proceeding, however, does not start the one-year period to run anew. The tolling provisions of § 2244(d)(2) merely excludes the time a post-conviction motion is under submission from the calculation of the one-year period of limitations. Depending on the toll, the clock simply stops and starts.

In Barcliff's case, the Court of Appeals declined to hear his direct appeal on July 22, 2005. Because a writ of *certiorari* from the United States Supreme Court was not sought, his conviction became final for AEDPA purposes 90 days later, on October 20, 2005. Mathematically, when petitioner filed his § 440.10 motion on December 9, 2005—50 days after October 20—there were 315 days remaining on his AEDPA limitations clock.

Supreme Court denied petitioner's § 440.10 motion on July 6, 2006. Petitioner, who had contemporaneous notice of that decision, did not appeal that decision until December 9, 2008, over 880 days later. Though such delay might seem to make the appeal untimely, in New York a defendant has 30 days after the prevailing party serves the aggrieved party with a copy of the order and notice of entry to timely file an appeal (*see* 22 N.Y.C.R.R. § 670.12(b)(1)). Timeliness is important not only for purposes of the appeal itself but also for AEDPA purposes. AEDPA's limitations period is only tolled by a *timely* pending state court appeal or collateral proceeding. *See Evans v. Chavis*, 546 U.S. 189, 197-200 (2006). Petitioner demurs, contending that his 30 day clock under New York law never started ticking, much less expired, because the People—the prevailing party on petitioner's § 440.10

motion—never served him with a copy of either the decision or associated notice of entry. The People assert that they did mail petitioner the notice of entry on July 12, 2006—a mere six days after Supreme Court issued its decision—but, other than the simple assertion of such service, the record is a bare cupboard.

The law is as muddled as the record as to service. "There is conflicting caselaw with respect to whether the [AEDPA] limitations period is suspended until the state court issues its decision or until notice of entry is served." *Aponte v. Artuz*, 2002 U.S. Dist. LEXIS 4410, at *6 n.1 (S.D.N.Y. 2002). Further, "[i]t is possible that only service of the order itself by the People as the prevailing party in the trial court proceeding, and not service of a notice of entry, would actually have been necessary to begin the running of the thirty-day period." *Reyes v. Phillips*, 2005 U.S. Dist. LEXIS 3049, at *7 n.1 (S.D.N.Y. 2005). However, respondent has pointed to no legal authority that clearly renders Barcliff's petition untimely in light of the parties' dispute as to the service of notice of entry. Given the legal uncertainty, and mindful that Barcliff at all times has been proceeding *pro se*, the Court will consider Barcliff's claims, which the Court concludes, in any event, are all without merit.

I. <u>Legal Insufficiency</u>

The primary argument raised in Barcliff's petition is that the evidence at trial could have only supported a conviction for intentional murder, not depraved-indifference murder—the charge on which he was convicted. Barcliff raised this argument on direct appeal and the Appellate Division rejected it on the basis that the claim was "unpreserved for appellate review." <u>People v. Barcliff</u>, 18 A.D.3d 666, 794 (2d Dep't 2005).

"When a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Rush v. Lempke*, 500 Fed. Appx. 12, 15 (2d Cir. 2012) (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)). As a consequence, because the state courts found that Barcliff's claim was defaulted, the Court may only review that claim if he shows cause and prejudice, or a fundamental miscarriage of justice.

Barcliff has not come close to making the required showing of cause, prejudice or a miscarriage of justice. More to the point, considering Barcliff's contention more broadly, his claim is clearly without merit. New York's depraved-indifference statute—which was the same at the time of Barcliff's trial as it is today—holds an individual guilty of second degree murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." New York Penal Law § 125.25(2).

Critically for purposes of petitioner's instant claim, Barcliff conceded at trial that he was drunk on the day in question. (Pet. Mem. at 2.) Under New York law at that time, a defendant's intoxication was considered a valid defense to intentional murder, but not to depraved-indifference murder. See People v. Register, 60 N.Y.2d 270, 277 (1983). The trial court instructed the jury accordingly, and this fact likely explains the jury's decision to convict Barcliff of the depraved-indifference charge

8

but acquit him of intentional murder. Further, there was other record evidence supporting a depraved-indifference verdict. Immediately following the murder Barcliff expressed remorse to several friends, stating that he wished he had only "jumped" the victim rather than kill him. In addition, Barcliff and the victim were friends and the shooting occurred during a seemingly minor argument about which one of them had damaged a friend's car. Finally, Barcliff shot Quamie only once and then fled while Quamie was still alive. This evidence all supports an inference that Barcliff did not intentionally murder Quamie, but rather acted under circumstances evidencing a depraved indifference to human life.

In short, there was ample record evidence from which the jury could have reasonably inferred that Barcliff lacked the intent required for first or second degree intentional murder. Moreover, Barcliff's argument simply does not present the type of situation that warrants federal habeas relief. Cf. Lampon v. LaValley, 504 Fed. Appx. 1, 4 (2d Cir. 2012) ("There is nothing fundamentally unjust about [petitioner's] continued incarceration for killing [the victim] by shooting him twice in the head. Whether acting intentionally or with depraved indifference, [petitioner] committed second degree murder under New York criminal law.") Because Barcliff's claim is both procedurally defaulted and entirely without merit, the writ cannot and shall not issue on this basis.

II. Ineffective Assistance of Counsel

Barcliff next claims that his trial counsel was constitutionally ineffective in two ways: (1) for failing to preserve his legal insufficiency claim for direct review, and (2) for failing to seek a jury verdict on the weapons possession charge. Barcliff

9

presented the first argument in state court and it was rejected on its merits.

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-part inquiry set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. But, there is, of course, "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (*quoting Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). Second, a petitioner must "affirmatively prove prejudice," demonstrating that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94, 104 S. Ct. at 2067-68).

First, with respect to trial counsel's failure to preserve Barcliff's legal sufficiency claim, as discussed above, there was ample evidence to support the jury's verdict on this count. It is not at all clear, therefore, that raising this objection at trial would have been a prudent decision. More to the point, Barcliff is essentially contending now that his counsel should have argued at trial he committed intentional murder (rather than depraved-indifference murder). Such a strategy, quite clearly, would be contrary to common sense. Certainly, counsel's failure to pursue such a trial strategy did not render his representation constitutionally infirm.

Second, with regard to counsel's failure to seek a jury verdict on the weapons possession charge, it appears that Barcliff never raised this claim in state court and his ability to timely do so has passed. Given Barcliff's failure to exhaust this claim in state court, the Court cannot consider it. *See Caravajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).[2]

### III. Missing Witness Charge

At the conclusion of the People's case, Barcliff's attorney requested the trial court give a "missing witness charge" with respect to Nayshawn Lawson, whom the People had declined to call during their case-in-chief. Lawson was a fellow gang member who was drinking with Barcliff on the morning of the shooting and was with Barcliff when he shot Quamie. The trial court declined to give the charge and Barcliff now avers that decision was constitutional error. Barcliff presented this argument to the state courts and it was rejected on the merits. That conclusion is due AEDPA deference.

"A missing witness instruction . . . tells a jury that it may draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support that party's version of events." *People v. Hall*, 18 N.Y.3d 122, 132 (2011) (citations omitted). "There are three preconditions to a missing witness instruction: First, the witness's knowledge must be material to the trial. Second, the witness must be expected to give noncumulative testimony

---

[2] The Court does note that because Barcliff was found guilty of murder by firearm, he undoubtedly would have been found guilty of the weapons possession charge had it been presented to the jury. Further, Barcliff fails to explain how the lack of a verdict on this count prejudiced him in any way.

11

favorable to the party against whom the charge is sought [and] [t]hird, the witness must be available to that party." *Id.*

Here, the third factor is undisputed, as Lawson was incarcerated in New York at the time of trial and therefore available to the People. Lawson also was clearly a witness of some importance, as he was an eyewitness to the shooting and spent much of the day of the murder with Barcliff. Nevertheless, the People declined to call Lawson for a number of reasons, including (1) he gave inconsistent testimony to the grand jury and to the police about the identity of the shooter, and (2) the People were concerned that Lawson, as a friend of Barcliff's, would not provide favorable testimony. The People's position was not surprising given that, at one point during his grand jury testimony, Lawson fingered a third party, rather than Barcliff, as the trigger-man. The prosecution explained to the trial court that it was reluctant to call a witness who was friends with defendant and previously provided testimony that hurt the People's case-in-chief. The trial court quite reasonably concluded that a missing witness charge was not appropriate under these circumstances because the second charge requirement was not met. (Trial Tr. at 1042-43.) That conclusion was reasonable, and was not contrary to any clearly established principle of federal law.

IV. <u>Prosecutorial Misconduct</u>

Barcliff next contends that the prosecution committed misconduct during summation by making allegedly inflammatory statements, including referring to Barcliff as a "killer" and "murderer" and by noting that the victim had two young daughters. Barcliff presented this argument to the state courts and it was rejected

12

on the merits.

The burden facing Barcliff on this claim is high. "An improper remark by a prosecutor will justify a reversal . . . only if it causes the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Restrepo*, 547 Fed. Appx. 34, 41 (2d Cir. 2013) (citations omitted). Indeed, Barcliff "must demonstrate not only that the error was clear and obvious but also that the remark constitutes flagrant abuse that affected [his] substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 41-42. "The United States Supreme Court has specifically warned that 'a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone.'" *Id.* (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)).

Plainly, the allegedly inappropriate comments identified by Barcliff were, at most, harmless error. Indeed, given the overwhelming evidence of Barcliff's guilt—including his own confession and compelling eyewitness testimony—it cannot be fairly concluded that the jury was swayed in its deliberations by the prosecutor's reference to the victim's children or his comments that Barcliff was a "killer" and a "murderer." Certainly, the state courts' conclusions that Barcliff's claim lacked merit was not contrary to any clearly established principle of federal law.

V.  Petitioner's Supplemental Claims

Finally, on April 5, 2011, while the instant petition was pending, Barcliff filed a supplemental brief asserting that his trial counsel was constitutionally ineffective

13

for failing to object to the trial court (1) allegedly reading instructions to the jury outside of Barlciff's presence, and, (2) giving an *Allen* charge. However, Barcliff failed to present either of these claims in state court, which now precludes federal habeas review. *See Caravajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

## Conclusion

For the foregoing reasons, Barcliff's application for a writ of habeas corpus is denied and his petition is dismissed.

Since Barcliff has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment for respondent and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
May 15, 2014

_____
ERIC N. VITALIANO
United States District Judge